UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

DON E. PATTERSON,
DIANE M. PATTERSON,

      Plaintiffs,

v.                                         Case No. 08-C-0889

HOMECOMINGS FINANCIAL LLC,

      Defendant.

DECISION AND ORDER DENYING MOTION TO DISMISS (DOC. # 7)
AND DENYING AS MOOT MOTION TO STAY PENDING RULING ON
MOTION TO DISMISS (DOC. # 14)

      Don and Diane Patterson, filed this case seeking declaratory and injunctive relief, compensatory damages and attorney fees for willful violation of the automatic stay of 11 U.S.C. § 362(a) by the defendant, Homecomings Financial, LLC, during the course of their Chapter 13 bankruptcy case. The defendant, Homecomings, LLC, seeks dismissal of the action under Fed. R. Civ. P. 12(b)(1) or 12(b)(6).

      The Pattersons filed this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of themselves and all Chapter 13 debtors in circumstances where Homecomings imposed pre-confirmation or post-confirmation charges without the prior approval of the presiding bankruptcy judge. Homecomings maintains that this court lacks subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1334(a) and that the complaint fails to state a claim upon which relief may be granted. After due consideration of the arguments and briefs the defendant's motion will be denied.

      According to the complaint, the Pattersons filed a joint Chapter 13 petition on July 13, 2005, and showed in their schedules that the market value of their homestead was

less than the amount due on their mortgage note. The trustee of the trust holding the mortgage on the Pattersons' homestead filed a proof of claim setting forth the arrearage on the mortgage note, including accumulated late charges and credits. This claim was approved by the bankruptcy judge and on September 30, 2005, the Pattersons' Chapter 13 plan was confirmed.

The Pattersons fell behind on their mortgage payments, and a second proof of claim was filed with the approval of the bankruptcy court. This proof of claim indicated that an additional $4,358.10 was owed on the note, including $143.08 in late charges and $800 in attorneys' fees and costs.

When the Pattersons refinanced their home in March 2007, they were required to pay off their creditors, including Homecomings, the third-party mortgage loan servicer. Their "Payoff Statement" included charges that exceeded the claims that were filed earlier by the mortgage holder and disclosed to the bankruptcy judge and the Chapter 13 trustee, in the amount of $956.24. The complaint adds that there is no record or other information that describes what these charges are for or why they should be paid. According to the complaint, Homecomings has imposed similar charges in other Chapter 13 cases in violation of the automatic stay of 11 U.S.C. § 362(a) and should be enjoined from engaging in such practices, required to account for improper charges, as well as pay damages and attorneys' fees.

In support of dismissal, Homecomings argues that the additional money taken by it was not property of the Chapter 13 estate or within the jurisdiction afforded by 28 U.S.C. § 1334. Also, it submits that the Pattersons have not pled any violation of the

2

automatic stay because the amounts allegedly paid to Homecomings were not property of the Chapter 13 estate.

Whether the fees collected by Homecomings were part of the Pattersons' Chapter 13 estate is a question that focuses on the elements of the Pattersons' claim rather than a question that addresses whether the court can adjudicate the case. Thus, any dismissal should be based on Rule 12(b)(6) rather than Rule 12(b)(1). *See Frey v. EPA*, 270 F.3d 1129, 1132 (7th Cir. 2001).

> A standard rule in considering jurisdictional challenges is that when the court's jurisdiction and the claim for relief are predicated on the same federal statute but the basis for relief is subsequently found to be inapplicable, the district court should not dismiss the case under Rule 12(b)(1), but rather proceed as if jurisdiction exists and determine the merits of the claim under Rule 12(b)(6).

*Id.* (internal quotation marks omitted).

The Pattersons assert that Homecomings recovered more money than had been claimed in, disclosed to and approved by the bankruptcy court. Consequently, they contend that Homecomings' actions violated 11 U.S.C. § 362(a)(3) and (4).

Subsection (h) of § 362 (since renumbered as subsection 362(k))[1] expressly states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The Seventh Circuit has held that this

---

[1] The Pattersons' bankruptcy filing predated the effective date of the 2005 amendments to the Bankruptcy Code. At the time they filed their bankruptcy petition, this provision was codified at 11 U.S.C. § 362(h). At the time they filed the present case in district court, the provision had been renumbered as subsection (k). However, the language of the subsection is unchanged. The parties have not addressed whether the court should refer to subsection (h) rather than (k). As the language is identical, the court will refer to the codification at the time the Pattersons filed their bankruptcy case.

3

section creates a cause of action which may be enforced even after bankruptcy proceedings have terminated. *Price v. Rochford*, 947 F.2d 829, 830-31 (7th Cir. 1991).

Sections 1334(a) and (b) of Title 28 state, respectively, that federal district courts "have original and exclusive jurisdiction of all cases under title 11" and "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Some district and bankruptcy courts within the Seventh Circuit have disagreed whether jurisdiction over § 362(h) cases fall under subsection (a) or (b). *Compare Halas v. Platek*, 239 B.R. 784, 792 (N.D. Ill. 1999) ("[T]his court concludes that a § 362(h) request for sanctions is within the exclusive jurisdiction of the bankruptcy court under § 1334(a)."), *with Long Beach Acceptance Corp. v. City of Chicago (In re Madison)*, 249 B.R. 751, 755-56 (Bankr. N.D. Ill. 2000) (stating that actions under § 362(h) are civil proceedings arising under Title 11 and fall under § 1334(b)). However, the Seventh Circuit suggested that § 362(h) cases are "cases under title 11" and § 1334(a) applies. *See Price*, 947 F.2d at 832 n.1 ("None of the parties have questioned the propriety of bringing the case in the district court, however, and the defect is not jurisdictional. 28 U.S.C. § 1334(a) (1988) (district courts have original jurisdiction of all civil proceedings under the Bankruptcy Code)."); *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989) ("Section 1334(a) of the Judicial Code vests original and exclusive jurisdiction over cases arising under Title 11 (the Bankruptcy Code) in the federal district courts, and a case under section 362(h) is such a case. So, without more, it would be clear that a suit to enforce one's rights under section 362(h) could be brought in district court before a district judge, as Martin-Trigona has done."). But regardless of whether subsection (a) or (b) applies, subject matter jurisdiction exists under

4

§ 1334, so the Rule 12(b)(1) challenge must be rejected. *Accord Radcliffe v. Int'l Painters & Allied Trades Indus. Pension Fund (In re Radcliffe)*, 372 B.R. 401, 405-06 (Bankr. N.D. Ind. 2007) ("The complaint seeks relief pursuant to 11 U.S.C. § 362(h) . . . and thus the Court's subject matter jurisdiction is provided by 28 U.S.C. § 1334(a) and (b) . . . ."), *aff'd* 390 B.R. 881 (N.D. Ind. 2008).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Enough facts must be set forth to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of her facts are accurate, she has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). All factual allegations in the complaint are taken as true. *Middleton v. City of Chicago*, 578 F.3d 655, 657 (7th Cir. 2009).

Upon the filing of a bankruptcy petition, § 362(a)(3) and (4) stay automatically "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and "any act to . . . enforce any lien against property of the estate." Subsection 362(a)(5) prohibits any act to collect, assess, or recover a claim against the debtor that arose before commencement of the bankruptcy case.

5

> Section 362 is the central provision of the Bankruptcy Code. When a debtor files for bankruptcy, section 362 prevents creditors from taking further action against him except through the bankruptcy court. The stay protects debtors from harassment and also ensures that the debtor's assets can be distributed in an orderly fashion, thus preserving the interests of the creditors as a group.

*Price*, 947 F.2d at 831. The policy behind the statute

> is to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors. The fundamental purpose of bankruptcy, from the creditors' standpoint, is to prevent creditors from trying to steal a march on each other, and the automatic stay is essential to accomplishing this purpose.

*Martin-Trigona*, 892 F.2d at 577.

The gist of Homecomings' argument for dismissal of this suit is that the Pattersons' refinancing proceeds were not property of the estate, and that its actions respecting those funds were not prohibited by the automatic stay. Title 11 U.S.C. § 541(a) includes as property of a bankruptcy estate all legal or equitable interests of the debtor in property, as well as proceeds or profits from property of the estate. Chapter 13 includes as estate property all property of the kind specified in 11 U.S.C. § 541, whether acquired pre- or post-petition but before the case is closed, dismissed, or converted, and all earnings from services performed by the debtor post-petition but before the case is closed, dismissed, or converted. 11 U.S.C. § 1306. However, "confirmation of a plan vests all of the property of the estate in the debtor" unless the plan or order confirming the plan provides otherwise. 11 U.S.C. § 1327(b). In *Black v. U.S. Postal Service* (*In re Heath*), 115 F.3d 521, 524 (7th Cir. 1997), the Seventh Circuit read these provisions together "to mean simply that while the filing of the petition for bankruptcy places all the property of the

6

debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan."

The bankruptcy court's order confirming the Pattersons' plan, of which this court takes judicial notice,[2] stated:

> IT IS FURTHER ORDERED, that during the pendency of the plan confirmed herein, all property of the estate, as defined in § 1306(a) of Title 11 of the United States Code, shall, unless provided otherwise in the Plan, remain under the exclusive jurisdiction of the Court and the debtor shall not, without the appropriate consent of the Chapter 13 Trustee, or the Court, sell or otherwise dispose of or transfer such property other than in accordance with the terms of the plan confirmed herein.

*In re Patterson*, No. 05-31589-SVK, slip op. at 2 (Bankr. E.D. Wis. Sept. 30, 2005). The parties do not dispute that the Pattersons' homestead was part of the bankruptcy estate pre-confirmation and continued as such post-confirmation.

The Pattersons' plan stated that "[u]pon payment of the amount allowed by the Court as a secured claim in the Plan, the secured creditors included in the Plan shall be deemed to have their full claims satisfied." *In re Patterson*, No. 05-31589-SVK, plan ¶ 3.a. (Bankr. E.D. Wis. July 13, 2005). Also, the plan stated that "[t]itle to the Debtor's property shall revest in debtor on conversion, dismissal, or discharge." *Id.* ¶ 11.

Homecomings argues that because the Pattersons received a discharge on October 30, 2008, the refinancing proceeds taken by Homecomings were not necessary to the fulfillment of the plan. Therefore, Homecomings submits that the funds were not property of the estate.

---

[2] In the future, if the parties reference documents from the Pattersons' bankruptcy case, they should be filed as part of this case.

7

This argument is one that may be considered on a motion for summary judgment, but not this motion to dismiss. The Pattersons have not yet had an opportunity to establish whether the monies taken by Homecomings impacted fulfillment of the plan. Because Homecomings took monies in addition to those allegedly allowed by the bankruptcy court, other estate property may have been impacted and used contrary to the confirmed Chapter 13 plan. Hence, at this stage of the case, prior to litigation discovery, it is too early to determine whether the monies Homecomings took were "necessary to the fulfillment of the plan" as described by *Black*. That the Pattersons received a discharge *after* they filed this case is not sufficient to establish that the estate was not impacted in some manner. Moreover, the Pattersons assert in their Complaint that Homecomings' action "reduced [their] (and the class's) ability to pay the reasonable and necessary costs due under the plan" (Compl. ¶ 39), and this claim must be believed at this time.

The present case is at a different stage than *Eden v. Robert A. Chapski, Ltd. (In re Eden)*, No. 03 CV 00116, 2003 WL 21147830 (N.D. Ill. May 14, 2003), which involved a failure of proof. The debtor in *Eden* failed to present evidence concerning the sources and amount of income and how fulfillment of the plan was impacted. *Id.* at *2-*3. Similarly, *Han v. GE Capital Small Business Finance Corp. (In re Han)*, No. 00-42086, 2005 WL 2456933 (Bankr. N.D. Fla. July 12, 2005), was decided at the summary judgment stage, and the undisputed evidence showed that postconfirmation direct payments to GE were made outside of the plan and were not made with property of the estate, *see id.* at *3. Likewise, *In re Ziegler*, 136 B.R. 497 (Bankr. N.D. Ill. 1992), was decided on affidavits after the parties waived a trial or evidentiary hearing, *see id.* at 499. Here, the Pattersons

8

must be allowed a chance to present their proof; the matter cannot be decided upon a Rule 12(b)(6) motion.

Further, Homecomings ignores the bankruptcy court's confirmation order, which mandated that all estate property at the time of the order remain estate property. Section 1327(b) of the Bankruptcy Code, upon which the Seventh Circuit in *Black* relied in concluding that property unnecessary for the plan reverts to the debtor upon confirmation, states that confirmation of a plan vests all of the property of the estate in the debtor unless the plan or order confirming the plan provides otherwise. 11 U.S.C. § 1327(b).

Here, the confirmation order provided otherwise, stating that all property of the estate remained under the court's jurisdiction. In addition, ¶ 11 of the Pattersons' plan specified that the Pattersons' property would revest only on conversion, dismissal, or discharge. Thus, the documents specific to the Pattersons' bankruptcy case provided that the monies allegedly taken by Homecomings were part of the estate.

Again, this case differs from *Eden*, where the plan provided that the property of the estate revested in the debtor upon confirmation and Eden was required to pay to the trustee only such future earnings as necessary for execution of the plan. *See Eden*, 2003 WL 21147830 at *1, *4. Instead, this case is like *In re Forte*, 341 B.R. 859 (Bankr. N.D. Ill. 2005), in which the confirmation order stated that "all property of the estate . . . shall continue to be property of the estate following confirmation," *id.* at 865. The *Forte* court distinguished its decision from the Seventh Circuit's *Black* decision:

> In *Black* the plan included language revesting property into the estate to the extent "necessary to fulfill the plan." That provision is roughly equivalent to what Judge Posner held

9

> resulted from the operation of sections 1306 and 1327: property returns to a debtor which is "not necessary to the fulfillment of the plan." *Black*, 115 F.3d at 524. The revesting provision in the confirmation order in this case is much more inclusive than that in *Black*, revesting all of the Debtors' property into the bankruptcy estate. . . .
> Accordingly, giving full effect to the revesting provision in the confirmation order, I conclude that the proceeds of the Debtor's refinancing became property of the bankruptcy estate by operation of that confirmation order.

*Id.* at 866.

Homecomings suggests that because the homestead at all times remained within the estate, the refinancing proceeds did not become part of the estate. The argument is that while the secured property remained in the estate, the refinancing funds were new money obtained post-confirmation, which were not contemplated by or necessary for completion of the plan.

The Pattersons have not pointed to any approval of their refinancing by the bankruptcy court that might have clarified the status of the refinancing proceeds as estate property or outside of the estate property. But this court is unpersuaded that money obtained from a mortgage on a homestead does not constitute proceeds of the real property and thus estate property under the bankruptcy court's confirmation order in the Pattersons' case. The funds were generated from the homestead, which at all times was estate property.

In *In re Drew*, 325 B.R. 765 (Bankr. N.D. Ill. 2005), the court considered whether proceeds from the refinancing of a mortgage on a home the debtors were attempting to keep pursuant to their confirmed plan was part of the Chapter 13 estate. The bankruptcy court found that it was, noting that under 11 U.S.C. § 1306, "property that a

10

Chapter 13 debtor acquires post-petition, like the refinancing proceeds the Debtors received in the cases at bar, becomes property of the estate pursuant to § 1306, in contrast to the post-petition acquisitions that do not become part of a Chapter 7 or Chapter 11 estate." 325 B.R. at 770. Noting the Seventh Circuit's *Black* decision, the *Drew* court held that

> the portions of the refinancing proceeds intended by the Debtors to be paid to complete their confirmed plans are part of the continuing estates under § 541 and § 1306(a)(1). Thus, the Court holds that the refinancing proceeds are part of the Debtors' bankruptcy estates post-confirmation because those proceeds were acquired by the Debtors for use in making payments under their confirmed plans.

*Id.* Again, in the present case it is too early to tell whether the refinancing proceeds were acquired for use in making payments under the confirmed plan, as the case has not reached the discovery or summary judgment stage.

Further, one bankruptcy court focused on the undisclosed nature of fees and charges by a bank receiving a mortgage payoff through refinancing and found that the bank took property of the estate. *See Jones v. Wells Fargo Home Mtg. (In re Jones)*, 366 B.R. 584 (Bankr. E.D. La. 2007), *aff'd*, 391 B.R. 577 (E.D. La. 2008).

> In order to confirm a plan, a chapter 13 debtor must commit his projected disposable income to the satisfaction of claims. Projected disposable income is all income earned by debtor, less expenses allowed for the necessary and reasonable costs of his support and that of his family. . . . The calculation of Debtor's disposable income includes the installment payments accruing post confirmation on Wells Fargo's loan. However, the amounts due by Debtor do not include an allowance for additional fees and costs. Thus, when Wells Fargo applies any portion of Debtor's earnings to undisclosed fees and charges, rather than the installments owed under the note and payable under the plan, it reduces Debtor's ability to pay either the reasonable and necessary

11

> costs of his support or the amounts due under his plan. As such, Wells Fargo's satisfaction of postpetition charges constitutes a taking of property of the estate and impacts the Debtor's ability to comply with the terms of the plan.

*Id.* at 599.

The Seventh Circuit has described the purpose of § 362 as preventing creditors from taking further action against a debtor "except through the bankruptcy court" and ensuring that the debtor's assets can be distributed in an orderly fashion. *Price*, 947 F.2d at 831. A creditor whose claim for a certain amount has been approved by the bankruptcy court but who requires more than that amount from the debtors to satisfy that claim works against the purpose of § 362. Although the Pattersons have not argued 11 U.S.C. § 362(a)(6) as well, they do not need to plead legal theories—just facts. *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999). Section 362(a)(6) prohibits any act to collect or recover a claim against the debtor that arose before the commencement of the bankruptcy case. Homecomings recovered from the debtors more than the claim amounts approved by the bankruptcy court. It is unknown according to the Pattersons, whether those amounts were for pre-petition or post-petition charges. Homecomings offers that they were charges outside of the claims and allowed under the mortgage documents, but according to the complaint, the source of the charges is unknown to the Pattersons. The complaint asserts that no record shows what these payments were for and that there presently is no way of knowing whether the charges were incurred pre-confirmation or post-confirmation. (Compl. ¶ 28.) Thus, the payoff charges could have been pre-petition debts. Further, the Pattersons' plan stated that "[u]pon payment of the amount allowed by the Court as a secured claim in the Plan, the secured

12

creditors included in the Plan shall be deemed to have their full claims satisfied." *In re Patterson*, No. 05-31589-SVK, plan ¶ 3.a. (Bankr. E.D. Wis. July 13, 2005). Homecomings' claim was satisfied when the Pattersons paid Homecomings what had been allowed by the bankruptcy court. But Homecomings required more, and this court finds that the Pattersons have alleged a plausible claim that the automatic stay was violated. *Cf. Jones*, 366 B.R. at 603 ("It is unconscionable that a lender would represent a certain debt was due, allow debtor to base his repayment plan on that sum, and then arbitrarily and without notice change the amounts owed without disclosure or amendment to its proof of claim.").

For these reasons,

IT IS ORDERED that Homecomings' motion to dismiss (Doc. 7) is denied.

IT IS FURTHER ORDERED that Homecomings' motion to stay pending ruling on the motion to dismiss (Doc. 14) is denied as moot.

IT IS FURTHER ORDERED that a status conference is set for April 13, 2010, at 3:30 p.m., and the parties should be prepared to discuss why this case should not be referred to the bankruptcy court for further proceedings.

Dated at Milwaukee, Wisconsin, this 24th day of March, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.  
C. N. CLEVERT, JR.  
CHIEF U. S. DISTRICT JUDGE

13